James Rees & Sons Company, Appellant, *v.* Pittsburgh.

Argued October 5, 1934. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey, Drew and Linn, JJ.

*H. Stewart Dunn,* of *Rose, Bechman & Dunn,* with him *Benjamin J. Jarrett, Charles B. Jarrett,* of *McCook & Jarrett,* for appellant.

*Thomas M. Benner,* First Assistant City Solicitor, with him *Ward Bonsall,* City Solicitor, for appellee.

Opinion by Mr. Chief Justice Frazer, November 26, 1934:

These proceedings originated by bill seeking an injunction to restrain the City of Pittsburgh from using the wharf on the southerly side of the Allegheny River for storing or parking automobiles. Plaintiff is a taxpayer of defendant city and owner of a plot of ground located at the corner of Duquesne Way and Fancourt Street. For many years plaintiff corporation has been engaged in the business of operating a machine shop for the building, repairing and equipment of steamboats. Duquesne Way is a public street 40 feet wide laid out and opened pursuant to the provisions of an act of assembly approved March 31, 1836, P. L. 317. It extends along

the Allegheny River front in the business district of the city and lies between the wharf proper and the abutting properties of which plaintiff's is one.

The testimony shows that, in an effort to relieve congestion resulting from the use of the city streets by automobiles, the municipal authorities permit the use of the wharf as a public parking space and charge ten cents a day for the storage of cars therein. The owners of about nine hundred automobiles avail themselves daily of these facilities. Appellant contends the use of the river front in this manner is contrary to its purpose as a public wharf or landing place, and that it is impossible for boats to tie up or dock near plaintiff's premises due to the presence of many parked cars upon the wharf, and further that, in collecting a fee for the parking privilege, the City of Pittsburgh is engaged in a private business without authority from the legislature to do so.

An examination of the record forces the conclusion that plaintiff is without special right to raise these issues merely by virtue of the fact its property is located on Duquesne Way. The case might be otherwise if substantial injury were shown, but here the record is entirely devoid of evidence that plaintiff's business has suffered in the slightest because of the presence of automobiles on the wharf; indeed, it was admitted at the bar of our court that it has been many years since the docking facilities of the wharf have been used by plaintiff company. The proximity of plaintiff's property to the river is accordingly not a factor in the controversy. As stated by the court below, this case was really brought "in the interest of owners and operators of parking lots and indoor parking garages, who feel that the use of the wharves for parking is an injustice to them." Such being the case, we are of opinion that plaintiff has no more reason to complain of the city's action than any other property owner, however remote from the river front, and, in the absence of facts showing a real or threatened injury to plaintiff, the bill should be dismissed. Plaintiff has shown no prop-

erty right in the wharf, arising from easement or other interest, which has been violated, and it is a fundamental rule that a court of equity will not award an injunction, especially against a municipality, where the plaintiff can show neither title to the property concerned nor damage resulting from its use. "It is the duty of the court when an injunction bill has been filed, to inquire and ascertain whether the individual, or corporation, seeking the relief, has a clear legal right to the use, occupation or enjoyment of the property or right, the invasion of which is sought to be enjoined": Myersdale & Salisbury St. Ry. Co. v. St. Ry. Co., 219 Pa. 558, 565-6.

If we consider the case as a taxpayer's bill to enjoin the municipality from performing an illegal act, appellant is not materially assisted thereby. Entirely apart from the fact that there is no evidence that plaintiff has been injured by the city's action in so far as the free use of or access to the wharf is concerned, we find no indication that any other member of the public has been deprived of landing space or docking facilities by the parking of cars on the waterfront. The fourteenth finding of fact of the court below states: "The parking of cars does not interfere with the use of the Duquesne Wharf as a wharf and public landing and no complaint has ever been made that the parking of cars has so interfered with the use of the wharf for river and wharf purposes."

There is no question but that the right of the public to use the wharf for purposes in connection with river trade is superior to that of the city to adopt the space for the parking of automobiles. The right of the city to lease to private individuals any part of the open space lying between Duquesne Way and the river was considered in Reighard v. Flinn, 189 Pa. 355. In denying such power to the municipality, we said, page 361: "......it is enough to know that in the fundamental grant to the city by the legislature of power over the landings, there is a most serious restriction upon any disposition of the control over the landings which will interfere with the

free, perpetual, public and unrestrained use of them by the whole community. The specific and positive language of the Act of 1836 is that 'the space so graded and lying between said way and low water-mark of the Allegheny River shall forever thereafter be occupied, used and employed as a public landing.' " The right of the public to use the wharf as a landing is paramount and cannot be taken away by ordinance of the city, but the case at bar is barren of evidence showing that this right has been violated.

The facts before us now are strikingly analogous to the situation presented in Clarey v. Phila., 311 Pa. 11, in which a taxpayer filed a bill to restrain the city from renting a municipally owned convention hall for the exhibition of boxing, wrestling or other sporting events conducted for private gain or profit. In affirming the action of the lower court in dismissing the bill, we said (page 14) : "there can be no objection to the city's receiving a return from the use of the hall by private persons upon occasions when it would otherwise be idle," and added (page 17), "this power must not be exercised so as to prevent or interfere with the use of the hall for the public purposes to which it was dedicated, which must always be given precedence."

The same principle is applicable here. The space along the waterfront of the Allegheny River which is not needed as a public landing or wharf may be used for the storage or parking of automobiles so long as such use does not interfere with its use for landing and wharf purposes. The court below did not err in dismissing plaintiff's bill.

The decree is affirmed at appellant's costs.